IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEXANDER LANCE | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| *v.* | § | SA-21-CV-00837-JKP |
| | § | |
| | § | |
| RODOLFO CONTERO, #3297, | § | |
| JAMES YBARRA, #0855, JESSE | § | |
| NORIEGA, #0989, EDWIN TURNER, | § | |
| #1385, JONATHAN REYES, #1470, | § | |
| MARSHALL DAVIS, #0152, PERLA | § | |
| DOMINGUEZ, #0789, DREW REYES, | § | |
| #0679, CODY HAEGELIN, #0795, and | § | |
| CITY OF SAN ANTONIO | § | |
| *Defendants,* | § | |
| | § | |

**DEFENDANT JESSE NORIEGA'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(c) AND/OR MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

TO THE HONORABLE JASON K. PULLIAM:

NOW COMES Defendant, Jesse Noriega, in the above styled and numbered cause, and files this his *Motion to Dismiss Pursuant to FED. R. CIV. P. 12(c) and/or Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56*. Defendant will respectfully show the following:

## I. INTRODUCTION

The events giving rise to this lawsuit occurred on May 30, 2020 in downtown San Antonio during the rioting and demonstrations which occurred in the aftermath of George Floyd's death in Minnesota. Plaintiff Alexander Lance (Lance) claims his constitutional rights were violated by San Antonio Police Department (SAPD) officers when he was hit with two rounds launched from a less lethal SAGE launcher fired by Defendant Jesse Noriega (Officer

Noriega).  Lance also claims Officer Noriega and other officers failed to provide him medical treatment.

## II.  BACKGROUND

### A.      Procedural Background

Lance filed this cause of action on June 24, 2021 in State District Court.  **Dkt. #1-3, pp. 1-12.**  In his State Court *Original Petition*, Lance only identified the City of San Antonio as a Defendant along with a "John Doe" Defendant.  **Id., p. 1.**  The City of San Antonio removed the matter to this Court on September 2, 2021.  **Dkt. #1, pp. 1-4.**  Lance filed a *Third Amended Complaint* on April 1, 2022.  **Dkt. #28.**  In his *Third Amended Complaint*, Lance named Officer Noriega as a Defendant.  **Id., p. 3, para. 7.**  In addition to naming Officer Noriega as a Defendant, Lance named as Defendants the following officers: James Ybarra, Edwin Turner, Jonathan Reyes, Marshall Davis, Drew Reyes, Cody Haegelin and Valentin Figueroa.  **Id., p. 3-4, para. 8-14.**  In his *Third Amended Complaint*, Lance claims that he and his friends went to downtown San Antonio on May 30, 2020 to watch citizens demonstrate.  **Id., p. 18.**  Lance alleges that he came into contact with Officer Noriega at about 10:19 p.m. on May 30, 2020 near the intersection of North Presa Street and College Street and that he yelled at Officer Noriega that the weapon he was carrying "better be on safety."  **Id., p. 5, para. 19.**  Lance claims that Officer Noriega, in response to his verbal comment, shot him twice with a SAGE launcher.  **Id.** Lance asserts that no one provided him medical attention.  **Id. p. 5, para. 20.**  Lance has asserted claims against Officer Noriega for excessive force under the Fourth and Fourteenth Amendments to the U.S. Constitution pursuant to §1983.  **Id., pp. 11-12, para. 39-44.**  Lance has also asserted a claim against all the officers, including Officer Noriega, that they were deliberately indifferent to him by not providing him medical treatment.  **Id., pp. 12-13, para. 45-48.**  As to the City,

Lance has asserted claims that the City has a policy for failing to train, monitor, discipline or supervise its officers.  **Id., p. 13, para. 51.**  Officer Noriega filed an *Original Answer* and asserted his entitlement to qualified immunity.  **Dkt. #53, p. 5, para. 32.**

**B.      Factual Background**

Following the death of George Floyd in Minnesota in late May of 2020, numerous cities across the United States experienced civil unrest.  The City of San Antonio was not immune from the unrest.  In response to large crowds gathering in downtown San Antonio on May 30, 2020 for demonstrations relating to Floyd's death, the SAPD had a compilation of officers assembled to try to maintain order and provide police protection for various sites throughout the City which included the Alamo.  **Ex. A.**  This compilation of officers was identified as a Mobile Field Force (MFF).  **Id.**  In support of the MFF, the SAPD deployed its SWAT Unit to provide less lethal munitions and chemical agents if necessary.  **Id.**  The SWAT Unit was divided into two (2) smaller groups.  **Id.**  SAPD officers Noriega, Turner, Jonathan Reyes, Drew Reyes, Davis, Haeglin, Ybarra and Figueroa were assigned to Sergeant Contero' group.  **Id.**  Officer Noriega was carrying a 40mm Sage launcher which is a less lethal piece of police equipment.  **Id.**  Sage launchers can fire different types of projectiles and on May 30, 2020 Officer Noriega was assigned 40 mm "sponge" rounds.  **Id.**  The sponge round projectile that comes out of the launcher has a spongy outside material that does not have metal exposed.  **Id.**  The metal portion of the round stays inside the Sage launcher after a round is discharged.  **Id.**

During the daylight hours of May the 30th, there were thousands of demonstrators in downtown San Antonio and the demonstrations were mostly peaceful.  **Id.**  However, as night fell, the large demonstrations turned into rioting with individuals looting, burglarizing businesses and physically attacking other citizens.  **Id.**  Amongst the looting and rioting, individuals were

throwing bricks, frozen water bottles and other dangerous objects at the police officers who were attempting to stop the violence. **Id.** While outnumbered by the large crowd of looters and rioters, SAPD officers used pepper balls and tear gas to attempt to disperse the individuals. **Id.**

Sergeant Contero's SWAT group was sent to different locations during the evening hours. **Id.** At one point, Sergeant Contero's SWAT group was sent to Alamo Plaza to quell the rioting in that area. **Id.** While there, police vehicles were vandalized by the rioters. **Id.** Sergeant Contero's SWAT group was eventually dispatched to an area near Broadway and Houston Streets because of reports of looting and destruction of property. **Id.** While traveling on the outside of their SWAT vehicle, Officer Noriega was struck by a hard object on his shoulder that was thrown by one of the rioters. **Id.** Once the SWAT group was on Houston Street, they saw people burglarizing several businesses. **Id.** Sergeant Contero's SWAT group was able to clear Houston Street between Alamo Street and Losoya Street and the group moved toward Commerce Street. **Id.** Due to the use of tear gas, Officer Noriega donned his gas mask as did the other members of his group. **Id.** While walking in this area, individuals were in elevated positions and throwing objects at the officers. **Id.**

Because of rioting and property destruction, Sergeant Contero's group was directed to move to the Commerce Street area. **Id.** Sergeant Contero's SWAT group went to Presa Street and began to walk down the street in a V-formation. **Id.** Officer Noriega was assigned to the left flank of the V-formation. **Id.** As they were walking down Presa Street, Lance appeared on the corner of Presa Street and College Street wearing khaki pants and a dark shirt. **Ex. B, :09; Id.** Other SWAT officers who were walking on College Street had already passed by Lance. **Ex. A; Ex. B, :09.** Lance told the officers: "*That bitch better be on safety – that's all I'm saying*." **Ex. B, :08-:10.** Lance's comment was an apparent reference to the officers' weapons.

Lance, who had 3 individuals with him, had a vehicle parked nearby with its trunk open.  **Ex. A.** As Officer Noriega passed by Lance, Officer Noriega noticed the way Lance had positioned his body and the movement of two of the individuals standing near him.  **Id.** Two of the males moved slightly back from Lance and bladed (angled) their bodies.  **Id.**  Lance, who was recording the officers with a camera in his left hand, moved his right hand behind his leg and bladed his body as well.  **Id.**  Lance appeared to have an object in his right hand, but Officer Noriega could not see what it was because Lance's hand was behind his leg and looked as if he was going to throw something.  **Id.**  Officer Noriega believed, based on what he saw, that Lance was preparing to throw something at the officers once they passed by which explained why Lance's two companions moved from his right side to give him room to throw the object.  **Id.** When Officer Noriega saw what Lance was doing, he moved toward him and told Lance to show him his hands.  **Ex. A; Ex. B, :13-:14.**  Lance failed to show Officer Noriega his hands.  **Ex. A.** When Lance did not show Officer Noriega his hand, Officer Noriega launched one round at Lance's leg to stop him from throwing the object Officer Noriega believed he had.  **Id.**  Officer Noriega launched the round when he was 12 meters from Lance.  **Id.**  After Lance was shot at, Officer Ybarra's body worn camera captured the sound of something metal hitting the ground. **Ex. B, :14.**  Also, after being shot at, a black object can be seen on the ground by Lance's foot. **Ex. B, :16-17.**  Lance yelled that he had a cigarette. **Ex. B, :17-:18.**

Officer Noriega moved toward Lance in an attempt to detain him.  **Ex. B, :17-:19.**  But Lance resisted being detained.  **Ex. B, :17-:18.**  Instead of submitting to being detained, Lance jerked away from Officer Noriega and turned and walked back toward the vehicle with the open truck.  **Ex. C, :07-:12.**  Lance, who refused to put his hands up in the air, then walked back toward Officer Noriega while yelling: "*motherfucker, you fuckin shot me motherfucker*." **Ex. C,**

**:11-:14.**  Officer Noriega, based on what he observed believed Lance was going to attack him.
**Ex. A.**  As Lance advanced toward Officer Noriega, Officer Noriega launched another sponge
round at Lance again to stop Lance's advance.  **Ex. C, :14.**  The round stopped Lance's advance
toward Officer Noriega and Lance turned around and went back toward the car with the open
trunk.  **Ex. C, :14-:16.**  This round was launched 10 meters from Lance.  **Ex. A.**  Lance again
cursed at Officer Noriega and yelled "*fucker*" and called Officer Noriega a "*fucking bitch*."  **Ex.
D, :03-:07.**  Lance then said the following: "*these niggas got me . . . [unintelligible] the fuck you
all did . . . you wanna shoot me again nigga . . .shoot me again . . . SAPD . . . come on, look at
that . . . look at that.*"  **Ex. D, :08-:25.**  Sergeant Contero ordered Officer Noriega to leave the
area.  **Ex. E, 2:00-2:20.**  Officer Noriega complied with the Sergeant Contero's order and the
SWAT group headed toward Commerce Street, the area that they were directed to go to because
of rioting.  **Ex. A.**

   Lance was provided medical treatment within a very short time after being struck by the
second round from the Sage launcher.   According to Lance, a gentleman approached in
camouflage and treated his arm by wrapping his arm with a compression bandage and Lance's
friend cut off his pants so Lance could see his leg.  **Ex. F, p. 85, ll. 16-21, p. 87, ll. 19-25, p. 88,
ll. 1.**  Lance's friend, Xavier, and he wrapped Lance's leg with a piece of gauze and "surgeon
tape."  **Id., p. 88, ll. 7-13, p. 90, ll. 22-25.**  The gentleman who showed up at the scene was
someone that Lance did not know but went by the name "Sarge" and appeared like he had
medical military experience.  **Id., p. 88, ll. 14-22.**  The gentleman was wearing gloves, had a Red
Cross arm band on his harm and wrapped Lance's arm.  **Ex. G, :16.**  According to Lance, no one
called 9-1-1 for an ambulance and Lance did not think he needed an ambulance.  **Ex. F., p. 89, ll.
6-13.**  The hospital was right up the street from the scene where Lance was struck with the

sponge round.  **Id., p. 90, ll. 18-21.**  After receiving treatment at the scene, Lance got into his friend Xavier's car and was taken to his apartment to get his partner, Ms. Burleson.  **Id., p. 85, ll. 23-25, p. 86, ll. 1-6.**  The distance from Lance's apartment to the hospital was approximately a quarter mile.  **Id., p. 86, ll. 7-11.**  The time lapse from when Lance had the last bandage put on until the time he got to his apartment was about six or seven minutes.  **Id., p. 91, ll. 9-12.**  Lance testified that from the time he was struck and sat down until the time he got to the hospital was for sure under 30 minutes.  **Id., p. 91, ll. 16-23.**

### III.  STANDARD OF REVIEW

**A.**     **FED. R. CIV. P. 12(c)**

A motion under FED. R. CIV. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment can be rendered by looking to the substance of the pleadings and any judicially noticed facts.  ***Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.***, 313 F.3d 305, 312 (5th Cir. 2002).  The standard of review under a Rule 12(c) motion is the same as under a FED. R. CIV. P. 12(b)(6) motion.  ***In re Katrina Canal Breaches Litig.***, 495 F.3d 191, 205 (5th Cir. 2007).  A plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.  ***See FED. R. CIV. P. 12(b)(6).***  When considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept all factual allegations made by plaintiff as being true and the court cannot affirm dismissal unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  ***Drs. Bethea, Moustoukas & Weaver, L.L.C. v. St. Paul Guardian Ins. Co.***, 376 F.3d 399, 403 (5th Cir. 2004).  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that a plaintiff is not under a heightened requirement of pleading specific facts, but only required to plead enough facts to state a claim to relief that is

plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  However, in order to survive a motion to dismiss, the Court held that a plaintiff's complaint must "nudge" their claims across the line from conceivable to plausible.  *Id.*  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that – even if doubtful in fact – the allegations in the complaint are true.  *Id.* at 165.  Conclusory allegations masquerading as factual conclusions will not suffice to prevent a motion to dismiss.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  A plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice.  *Twombly*, 127 S.Ct. 1964-65; *citing* *Papasan v. Allain*, 478 U.S. 265, 268 (1986).  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*

**B.**     **Fed. R. Civ. P. 56**

Summary judgment is appropriate if there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law.  *EMASCO Ins. Co. v. American Inter. Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but they need not negate the elements of the nonmovants case.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1074 (5th Cir. 1994).  If the moving party fails to meet its burden, the motion must be denied regardless of the nonmovant's response.  *Id.*

If the movant's burden is satisfied, then the nonmovant must identify specific facts in the summary judgment record demonstrating that there is a material fact issue concerning the

essential elements of its case for which it will bear the burden of proof at trial. ***Bazan v. Hidalgo County***, 246 F.3d 481, 489 (5th Cir. 2001). The evidence is viewed in the light most favorable to the non-moving party. ***Id***. To avoid summary judgment, the nonmoving party must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 324 (1986). Conclusory allegations, unsubstantiated assertions, casting doubt on material facts or a scintilla of evidence do not satisfy the nonmovant's burden. ***Little***, 37 F.3d at 1075. A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish an element essential to that party's case. ***Celotex***, 477 U.S. at 322-323. In the absence of proof from the nonmovant, the trial court is not required to assume that the nonmoving party could or would have proven the necessary facts. ***Id***.

When qualified immunity is pled by an officer, the officer only needs to plead his good faith, which then shifts the burden to the plaintiff who must rebut the defense by establishing that the officer's alleged wrongful conduct violated clearly established law. ***Michalik v. Hermann***, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct. ***Id.***

If there is video recorded evidence that discredits the non-moving party's version of events, the court should not consider the evidence in the light most favorable to the non-movant. ***Scott v. Harris***, 550 U.S. 372, 380-81 (2007). Instead, the court should view the evidence in the light depicted in the video recording. ***Id.***

## IV.  QUALIFIED IMMUNITY

Officer Noriega is entitled to qualified immunity.  Government officials performing discretionary functions generally are shielded from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038 (1987);  *see also Harlow*, 102 S.Ct. at 2727.  A constitutional right must be implicated, and "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990).   An official will be immune if "the law with respect to [his] actions was unclear at the time the cause of action arose" or if "'a reasonable [official] *could have believed* . . . [his actions] to be lawful, in light of clearly established law and the information . . . [the official] possessed.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989) *quoting* *Clark v. Evans*, 840 F.2d 876, 879 (11th Cir. 1988).

The central concept of clearly established is that of "fair warning" in that the law can be clearly established despite notable factual distinctions between precedents relied on and cases then before the court so long as the prior decisions give reasonable warning that the conduct then at issue violated constitutional rights. *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). "Although a case on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that is conduct is definitively unlawful." *quoting Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).  "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not

sufficient to establish a right "clearly" in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Id.*

## VI.  ARGUMENT

### A.  Fourteenth Amendment

Lance has asserted that he was subjected to excessive force by Officer Noriega and that this excessive force deprived him of his life and liberty interests which constituted a violation of his substantive due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution.  **Dkt. #28, p. 11, para. 23.**  However, a plaintiff does not have a due process claim under the Fourteenth Amendment if the claim is susceptible to analysis under a specific constitutional source.  *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998).  Since Lance is alleging that he was subjected to excessive force under the Fourth Amendment, that amendment is a more specific constitutional source for his claims.  Therefore, his claims under the Fourteenth Amendment should be dismissed for failing to state a claim for which relief can be granted.

### B.  Fourth Amendment

When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures.  *Tolan v. Cotton*, 134 S.Ct. 1861, 1865 (2014).  An excessive force claim under the Fourth Amendment first requires evidence of a seizure.  *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).  Next, the plaintiff must show that he suffered 1) an injury; 2) resulting directly and only from the use of force excessive to the need; and 3) that the force used was objectively unreasonable.  *Id*.  The plaintiff does not have to demonstrate a significant injury, but must have suffered from some form of injury.  *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).  The injury must be more

than *de minimis* and is evaluated in the context in which the force was deployed. ***Glenn v. City of Tyler***, 242 F.3d 307, 314 (5th Cir. 2001).

In determining if the use of force was clearly excessive and objectively unreasonable, a court should pay particular attention to the facts and circumstances of each case. ***Graham v. Connor***, 109 S.Ct. 1865, 1872 (1989). This includes the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others and whether he is actively resisting arrest or attempting to evade arrest by flight. ***Id.*** The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ***Id.*** In relation to excessive force claims, not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. ***Id.*** The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments, in circumstances that are tense, uncertain and rapidly evolving, about the amount of force that is necessary in a particular situation. ***Id.*** In a case involving the use of deadly force, the objective reasonableness balancing test is constrained. ***Flores***, 381 F.3d at 399. The use of deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or others. ***Romero v. City of Grapevine, Texas***, 888 F.3d 170, 177 (5th Cir. 2018).

The facts giving rise to Lance's allegations unfolded in San Antonio during mass rioting and looting and given Lance's aggressive actions, Officer Noriega discharging a less lethal round to stop an assault was clearly not unreasonable. Less lethal rounds are designed to cause pain to gain control or the compliance of a person. **Ex. A.** Prior to encountering Lance, Officer Noriega had already been the subject of an assault when a projectile was launched at him. **Id.** While

walking down College Street, Contero's SWAT group was met by Lance and his cohorts with Lance telling the officers in relation to their weapons: "*That bitch better be on safety – that's all I'm saying*."   **Ex. B, :08-:10.**   The officers were also confronted with at least 3 individuals who were near a car with an open trunk.   **Ex. A.**   Additionally, Lance's attire was nothing shy of suspicious.  Lance was wearing, as described by Officer Noriega, a tactical pouch.  **Id.**  A tactical pouch is used by law enforcement officers and military personnel to carry items needed during tactical operations.  **Id.**  Lance's tactical pouch was clearly visible to Officer Noriega.  **Ex. A; Ex. H.**  In addition to his tactical pouch, Lance had white cloth wrapped around his right wrist area.  **Ex. A, Ex. H.**  Lance also had a flannel shirt draped over his shoulders which further added to obscuring his right arm from Officer Noriega.  **Ex. A; Ex. B. :12-:13.**  When Officer Noriega looked in Lance's direction, his two cohorts moved away from him as if to give him room to throw an object and bladed/angled their bodies in relation to Officer Noriega.  **Ex. A.**  Officer Noriega also saw Lance blade his body and move his right hand behind his right leg as if he were going to throw something at the officers.  **Id.**  When queried under oath about the whereabouts of his right hand, Lance admitted the following:

> **Counsel for Noriega:** "Where was your right hand when you were shot?"
> **Lance:**                "I'm not sure.  I think it was down by my side."  **Ex. F, p. 77, ll. 10-11.**

In response to Lance's actions, Officer Noriega yelled for Lance to show him [Officer Noriega] his "hands." **Ex. A.**  Lance's stance and his body position looked as if he was going to throw an object.  **Id.**  Lance failed to show Officer Noriega his right hand and launched one less lethal round at Lance which immediately stopped Lance's aggressive act.  **Id.**  After being struck, the sound of what sounds like a metal object can be heard hitting the ground and a black item is

located near the spot where Lance was standing.  **Ex. B, :14-:17.**  Moreover, Lance immediately claimed he had a cigarette in his hand.    **Ex. B, :17-:18.**

Officer Noriega had a reasonable belief that Lance was going to throw an object and assault his fellow officers.  Lance's hand was admittedly down by his side, Lance refused to show Officer Noriega his hand, Lance admittedly had something in his hand, Lance's hand was obscured by the way he was standing, Officer Noriega saw Lance look as if he was going to throw something and Lance's cohorts had stepped away to give him room to throw the object. Under Texas law, a person commits the offense of assault if the person intentionally, knowingly or recklessly causes bodily injury to another.  **TEX. PENAL CODE §22.01(a)(1).**   The offense is second degree felony if the offense is committed against a person the actor knows is a peace officer while the officer is lawfully discharging an official duty.  **TEX. PENAL CODE §22.01(b-2).**  Under the *Graham* factors, Lance was engaged in the serous crime of attempting to assault the officers.  Felony assault is a serious offense. ***Escobar v. Montee***, 895 F.3d 387, 394 (5th Cir. 20180); ***Sharkey v. Humphrey County, Mississippi***, 2020 WL 3965975, at *2 (N.D. Miss. Jul. 13, 2020)(*assault is a serious crime that weighs against a finding of excessive force*).

In relation to the second *Graham* factor, Lance clearly posed an immediate danger to the safety of the officers.  In *Batukova v. Doege*, 994 F.3d 717 (5th Cir. 2021), a case involving deadly force wherein a deputy shot the plaintiff, the Court granted the deputy's entitlement to qualified immunity when the plaintiff repeatedly refused to show the deputy her hands, refused to get down on the ground and reached her hand behind her towards her waistband which the deputy perceived to be a reach for a weapon. ***Batukova v. Doege***, 994 F.3d 717, 726-728 (5th Cir. 2021).  Like the plaintiff in *Batukova*, Lance refused to show Officer Noriega his hand. After failing to show his hand, it appeared Lance was going to throw an object at the officers.

Further, Lance admitted his hand was down by his side.  Moreover, while he claims it was a cigarette, Lance had something in his hand.  Coupled with this action, Lance's cohorts appeared to step away to give him room to throw the object.  The totality of the circumstances encountered by Officer Noriega showed he was confronted with a situation that posed immediate danger to his fellow officers.

Other cases from the Fifth Circuit support the use of deadly force when an individual reaches for an unknown object.  In *Manis v. Lawson*, 585 F.3d 839 (5th Cir. 2009), the plaintiff was unconscious due to intoxication and parked on a set of railroad tracks when the officers located the plaintiff.  ***Mannis v. Lawson***, 585 F.3d 839, 842 (5th Cir. 2009).  When the officers roused the plaintiff, they ordered the plaintiff to show them his hands but he ignored the officers and repeatedly reached under the car seat.  ***Id.***  When the plaintiff appeared to retrieve an object and straighten up, one of the officers fired four rounds and killed the plaintiff.  ***Id.***  The Court held that the officer's actions were objectively reasonable under clearly established law and that he was entitled to qualified immunity.  ***Id.***

In another case, *Ontiveros v. City of Rosenberg, Texas*, 564 F.3d 379 (5th Cir. 2009), the plaintiff locked himself in a bedroom which officers had to kick in the door to enter the room.  ***Ontiveros v. City of Rosenberg, Texas***, 564 F.3d 379, 381 (5th Cir. 2009).  Once inside the bedroom, the officer illuminated the room with his tactical light and saw the plaintiff holding an object over his head.  ***Id.***  The officer told the plaintiff to show him his hands and the officer moved behind the door.  ***Id.***  The officer observed the plaintiff reaching into a boot for what the officer believed was a weapon. ***Id.*** The officer fired two rounds and killed the plaintiff.  ***Id.***  No weapons were found in the bedroom.  ***Id.***  The Court held that the force used by the officer was not clearly unreasonable when viewed from the officer's perspective and the evidence before the

Court.  *Id.* at 383.  Both *Manis* and *Ontiveros* show that an officer does not use unreasonable force when deadly force is implemented in response to an individual who refuses to show his or her hands and reaches for an unknown item.  In this case, Lance was ordered to show his hands and refused and Officer Noriega, based on his observations, reasonably believed Lance was going to throw an object at the officers.  Lance clearly engaged in conduct that posed a danger to the officers.

The third factor in *Graham*, whether an individual is resisting or evading arrest, also shows the actions of Officer Noriega were not unreasonable.  While Lance did not resist detention and walk away from Officer Noriega until after the first shot, as discussed above, Lance was non-compliant with the order to show his hands to Officer Noriega.  These facts demonstrate Lance's refusal to follow the orders of Officer Noriega which would have allowed him to detain Lance.

Under the *Graham* factors, Officer Noriega's use of the Sage launcher to stop Lance's throwing of an object was reasonable.  Even if the Court considers the use of the Sage launcher to be the use of deadly force, which it was not, Officer Noriega's use of force was not unreasonable. Officer Noriega had probable cause to believe Lance posed a serious risk of harm to the officers because he was going to throw an object at them.  Throwing objects at officers in the type of situation that Officer Noriega and the rest of his group were confronted with on May 30, 2020 posed a serious risk to the officers.

In relation to Officer Noriega's entitlement to qualified immunity, Lance has to rebut Officer Noriega's defense by establishing that Officer Noriega violated clearly established law. In order to carry his burden, Lance has to show a violation of clearly established law by

identifying a case that put Officer Noriega on notice that his specific conduct was unlawful. ***Rivas-Villegas v. Cortesluna***, 142 S.Ct. 4, 8 (2021).

Lance cannot point to any caselaw or authority putting Officer Noriega on notice that his actions in May of 2020 would have been unlawful. As discussed above, the law supports Officer Noriega's position that he could use the Sage launcher under the circumstances in which he was presented with when he encountered Lance. Moreover, in May of 2020 there was no clearly established law that an officer could not discharge a Sage launcher (a less lethal round) at an individual when an officer observed these facts: 1) the officer encountered an individual in a downtown area during mass rioting and looting; 2) the officer observed the individual was near an open trunk of a car; 3) the officer observed other people with the individual who stepped away from the individual and appeared to be giving the individual room to throw an object; 4) the officer encountered an individual wearing a tactical pouch; 5) the officer encountered an individual who refused to show the officer his hand and bladed his body to the officer; 6) the officer could not see the individual's hand because it was obstructed by the individual's body; 7) the officer believed the individual was going to throw something at other officers based on what he observed, and; 8) the officer encountered an individual with his hand wrapped with cloth and had a shirt draped over part of his arm. Also, Lance cannot identify a case that put Officer Noriega on notice in May of 2020 that his discharge of the Sage launcher and use of a less lethal round was a use of deadly force and that his actions were a violation of the law. Since there was no clearly established law putting Officer Noriega on notice that discharging his Sage launcher under these conditions was a violation of the law, he is entitled to qualified immunity.

The discharge of the second round from the Sage launcher at Lance was also not unreasonable. After Officer Noriega discharged the first round, Officer Noriega attempted to

detain Lance.  **Ex. A.**  However, as the video clearly shows, Lance resisted being detained.  **Ex. B, :17-:18.**   In fact, Lance admitted that he pulled away from Officer Noriega.  **Ex. F, p. 78, ll. 6-11.**   Under Texas law, a person commits the offense of evading arrest or detention if he intentionally flees from a person or federal special investigator attempting lawfully to arrest or detain him.  **TEX. PENAL CODE §38.04(a).**   Further, he committed the offense of resisting arrest. The offense of resisting arrest is defined as follows:

a)   A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search or transportation of the actor or another by using force against the peace officer or another.

b)   It is no defense to prosecution under this section that the arrest or search was unlawful.

**TEX. PENAL CODE §38.03.**   The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest.   ***Ramirez v. Martinez***, 716 F.3d 369, 376 (5th Cir. 2013).   Lance evaded and resisted arrest when he clearly pulled away from Officer Noriega who intended on detaining him.  **Ex. A.**

Under the *Graham* factors, Lance had clearly engaged in serious criminal behavior.  As fully discussed above, Lance had already attempted to assault the officers which was a serious offense.  Lance then evaded detention and resisted being detained.  Either one of these charges was a serious offense.  In the Fifth Circuit, a DUI is considered to be a serious offense for purposes of the *Graham* factors.   ***Cooper v. Brown***, 844 F.3d 517, 522 (5th Cir. 2016). If a DUI is considered a serious offense, an individual actively refusing to be handcuffed and then pulling away from an officer constitutes a serious offense as well.  Lance's conduct of evading and resisting detention satisfy the first and third *Graham* factors because Lance had committed

serious crimes and was involved in evading detention.  These factors weigh in favor of showing the use of force was not unreasonable.

In relation to the second *Graham* factor of Lance posing an immediate threat to the safety of the officers, Lance clearly posed a threat.  Lance's conduct of attempting to assault the officers cannot be ignored and is one of the acts that has to be considered in relation to the second shot that was discharged at him by Officer Noriega.  In *Salazar v. Molina*, 37 F.4d 278, 282 (5th Cir. 2022) the plaintiff had led police on a vehicle chase and when the plaintiff was stopped he quickly exited the vehicle, dropped to his knees and raised his hands.  ***Salazar v. Molina***, 37 F.4d 278, 280 (5th Cir. 2022).  The plaintiff then lowered himself to the ground and had his hands above his head and had his legs crossed.  *Id.*  A deputy exited his police car and within a few seconds had run up toward the plaintiff, who was still lying on the ground but had uncrossed his legs, and fired his taser at the plaintiff.  *Id.*  In reversing the district court's assessment that there were genuine factual disputes as to whether the plaintiff posed an immediate threat to anyone at the scene, the Fifth Circuit disagreed with the district court and held that what preceded the plaintiff's surrender mattered.  *Id.*  The Court held that when a suspect has put officers and bystanders in harm's way to try to evade capture, it is reasonable for officers to question whether the now cornered suspect's purported surrender is a ploy.  *Id.*  The Court further held that this was especially true when the suspect was unrestrained, in close proximity to the officers and potentially in possession of a weapon.  *Id.*

Like the plaintiff in *Salazar*, Lance had already engaged in a serious crime and this cannot ignored.  The difference in this case from the facts in *Salazar* is that Lance <u>continued</u> with his hostile and aggressive conduct.  Namely, Lance turned around to go directly back at Officer Noriega.  **Ex. A.**  Lance was also still wearing the tactical pouch on his side and refused to put

his hands up as people were yelling at him to do so.  At this point, Officer Noriega believed that Lance was going to attack him.  **Id.**  This was a reasonable belief on the part of Officer Noriega. Lance was coming directly at Officer Noriega and was calling him a "motherfucker."  Officer Noriega, who was unable to gain control of Lance only seconds earlier, still had his Sage launcher in his hand and feared that if he got into a physical confrontation with Lance that Lance could either gain control of the Sage launcher or Officer Noriega's department issued handgun. **Id.**  Officer Noriega fired the Sage launcher, skipping the round off the ground to dissipate the velocity, at Lance's leg area to stop Lance's advance.  **Id.**  The striking of Lance with the sponge round stopped Lance's advance.  **Id.**  Lance continued to pose a threat to Officer Noriega and the use of the Sage launcher was clearly not excessive given the dangerous situation the officers were in.

Under the *Graham* factors, the launching of the second less lethal round was reasonable. Again, even if the discharge of the second less lethal round was considered deadly conduct, which it was not, Officer Noriega had probable cause to believe Lance posed a serious risk to him.  Lance had already resisted being detained, was going directly at Officer Noriega and was swearing at him.  Lance posed an immediate threat to Officer Noriega because it appeared as if Lance was going to attack Officer Noriega.  Further, if they had become involved in a physical struggle, Officer Noriega was carrying the Sage launcher which could have hindered his ability to maintain control of the launcher and his sidearm.

Additionally, Lance cannot overcome Officer Noriega's entitlement to qualified immunity.  Lance cannot demonstrate that the law was clearly established in May of 2020 that his conduct in light of the circumstances he was faced with was unconstitutional.  Lance cannot point to a case putting Officer Noriega on notice that discharging a Sage launcher at a suspect,

who was directly coming at an officer and yelling profanities and had already attempted to throw an item at officers and had evaded detention, was a clear violation of the law.  Lance also cannot point to a case putting Officer Noriega on notice that in May of 2020 his use of the Sage launcher was deadly conduct under the circumstances he was confronted with in relation to Lance.   Since the law was not clearly established that Officer Noriega's conduct was unconstitutional, he is entitled to summary judgment.

## C.   <u>Denial of Medical Care</u>

Lance claims that Officer Noriega failed to render him medical aid.  **Dkt. #28, p. 12, para. 47.**  The Due Process clause of the Fourteenth Amendment guarantees that a person detained by the police is entitled to medical care.  ***Carter v. Reach***, 399 F.App'x 941, 942 (5th Cir. 2010).  A violation of this right by an officer by deliberate indifference to a serous medical illness or injury is actionable under §1983.  ***Id.***  To prevail on a claim of deliberate indifference under the Fourteenth Amendment, a plaintiff must show that an officer acted with subjective knowledge of a substantial risk of serious harm, followed by a response of deliberate indifference.  ***Batukova***, 994 F.3d at 732.  To defeat qualified immunity, a plaintiff has to establish that the officer was aware of a substantial and significant risk but effectively disregarded it.  ***Jacobs v. West Feliciana Sheriff's Dept.***, 228 F.3d 388, 395 (5th Cir. 2000).  In the context of an arrestee, the plaintiff must show that: 1) the official knew of facts leading to an inference of a substantial risk of serious harm to the plaintiff; 2) the official drew that inference, and; 3) the official's actions indicate that the official intended the harm.  ***Thompson v. Upshur County***, 245 F.3d 447, 458-59 (5th Cir. 2001).   A plaintiff must show that the officer refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  ***Id.***  If a

plaintiff relies on delay as the basis of the claim, then the plaintiff must show that the delay resulted in serious harm.  ***Id.***

Lance's claims that Officer Noriega failed to provide him medical care fails at several levels.  First, Lance has no evidence that any failure of Officer Noriega to provide him medical care caused him to suffer an injury and/or exacerbated an injury he already had.  Lance also has no evidence that Officer Noriega knew Lance needed medical care and that Officer Noriega disregarded the need and failed to provide him medical care.   Therefore, summary judgment should be granted in Officer Noriega's favor.

Second, the summary judgment shows that Lance did not suffer an injury because of a failure by Officer Noriega to provide him medical care.  Lance received medical treatment from an individual who appeared to be well versed in providing such treatment.  According to Lance, the individual identified as "Sarge" appeared as if he had military medical experience.  **Ex. F, p. 88, ll. 19-22.**  In fact, the video evidence shows the gentleman [Sarge] wearing gloves and applying the compression wrap to Lance's arm with skill.   **Ex. G :16.**   The unidentified gentleman clearly knew what he was doing in terms of first aid.  Another dressing was applied to Lance's leg by himself and his friend Xavier.  **Ex. F, p. 88, ll. 7-13.**  Lance admitted that he did not need an ambulance and one was not called because the hospital was just up the street from where they were located which was approximately a quarter mile away.  **Ex. F, p. 86, ll. 1-8, p. 90, ll. 16-21.** Instead of going to the hospital immediately, Lance and his friends went to his apartment and got his partner and then went to the hospital.  **Id., p. 91, ll. 1-8.**  Lance admitted that the time from the placement of the last wrap on him until the time he got to his house was approximately 6 or 7 minutes.  **Id., p. 91, ll. 9-12.**  From the time he had the last bandage on until the time he got to the hospital was for sure less than 30 minutes.  **Id., p. 91, ll. 16-23.**

The evidence shows what treatment Lance received.  Lance cannot show that he would have gotten any better or different first aid from Officer Noriega and that because he did not receive the medical treatment and/or first aid from Officer Noriega that he sustained an injury. Further, Lance admitted that he did not need an ambulance.  As such, if Lance claims that Officer Noriega should have summoned an ambulance for him, Lance's own testimony shows that an ambulance was not necessary.  Since the summary judgment evidence demonstrates that Lance did not suffer any injury because of Officer Noriega not providing him medical care, Officer Noriega is entitled to summary judgment for Lance's deliberate indifference claim under the Fourteenth Amendment.

To the extent Lance may attempt to claim that Officer Noriega delayed him receiving medical care, the summary judgment evidence shows otherwise.  As discussed above, Lance was provided first aid shortly after he was hit the second time.  Lance also admits that he went to his apartment to get Ms. Burleson and that this occurred within 6 to 7 minutes after his last wrap was placed on him and that he was at the hospital within 30 minutes of the last wrap being placed. Lance cannot show that had Officer Noriega acted he would have received medical care any quicker.  Lance also cannot show that any delay in medical care by Officer Noriega caused him to suffer any injury.

Third, pretrials detainees have to be provided with medical care unless the failure to provide the care is related to a legitimate governmental interest.  ***Batukova***, 994 F.3d at733; ***citing Baldwin v. Dorsey***, 964 F.3d 320, 327 (5th Cir. 2020).  In this case, Officer Noriega and the rest of the SWAT group were on their way toward Commerce Street in order to stop the destruction of property and rioting.  **Ex. A.**  Within a few seconds of the second round being launched at Lance, Sergeant Contero ordered Officer Noriega repeatedly to move on and to push

to their destination.  **Ex. E, 2:00-2:20.**  The SWAT group was moving toward Commerce Street to stop rioting.  Under  Texas law, a peace officer has a duty to cause persons who are rioting to disperse by either commanding them to disperse or by arresting the persons who are engaged I the rioting.  **TEX. CODE CRIM. PROC. ART. 8.04.**  Therefore, quelling a riot was a legitimate governmental interest.  Additionally, Lance does not have any evidence that Officer Noriega and the SWAT group he was with were not heading to a rioting group or where destruction was occurring.  Therefore, Officer Noriega was not required to provide Lance medical treatment (even if he had known of the need for treatment, which Officer Noriega did not know) under the circumstances which Officer Noriega was operating under.

Fourth, Lance cannot overcome Officer Noriega's entitlement to qualified immunity for his deliberate indifference claim under the Fourteenth Amendment.  Again, Lance has to show a violation of clearly established law by identifying a case that put Officer Noriega on notice that his specific conduct was unlawful.  Lance cannot identify a case wherein officers, who are involved in controlling rioting and looting and were moving to a specific point in the town to quell the disturbance, were required to stop and render medical aid to someone they used less lethal force to stop what appeared to be an attack and after the use of the less lethal force continued to act in an aggressive manner and continued to yell at the officer.  Since the law was not clearly established that Officer Noriega's conduct under the circumstances he was presented with was unconstitutional, he is entitled to qualified immunity.

WHEREFORE PREMISES CONSIDERED Defendant Jesse Noriega moves that the Court grant his *Motion to Dismiss Pursuant to FED. R. CIV. P. 12(c) and/or Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56* him any and all further relief that he may be entitled to whether in law or equity.

Respectfully submitted,

FITZPATRICK & KOSANOVICH, P.C.
P.O. Box 831121
San Antonio, Texas  78283-1121
(210) 408-6793
(210) 408-6797 - Facsimile

_____/s/_____
Mark Kosanovich
SBN: 00788754
mk@fitzkoslaw.com

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on the 4th day of August 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Tim Maloney<br>Eric A. Campolo<br>Law Offices of Maloney & Campolo<br>926 South Alamo Street<br>San Antonio, Texas  78205<br>tmaloney@maloneyandcampolo.com<br>ecampolo@maloneyandcampolo.com<br><br>Charles S. Frigerio<br>Law Offices of Charles S. Frigerio<br>A Professional Corporation<br>Riverview Towers<br>111 Soledad, Suite 465<br>San Antonio, Texas  78205<br>csf@frigeriolawfirm.com<br><br>Elizabeth Guerrero-Southard<br>Assistant City Attorney<br>The Office of the City Attorney<br>Litigation Division<br>International Center<br>203 South St. Mary's Street, 2nd Floor<br>San Antonio, Texas  78205<br>Elizabeth.Guerrero-Southard@sanantonio.gov | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>_____/s/_____<br>MARK KOSANOVICH |

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEXANDER LANCE | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| *v.* | § | SA-21-CV-00837-JKP |
| | § | |
| | § | |
| RODOLFO CONTERO, #3297, | § | |
| JAMES YBARRA, #0855, JESSE | § | |
| NORIEGA, #0989, EDWIN TURNER, | § | |
| #1385, JONATHAN REYES, #1470, | § | |
| MARSHALL DAVIS, #0152, PERLA | § | |
| DOMINGUEZ, #0789, DREW REYES, | § | |
| #0679, CODY HAEGELIN, #0795, and | § | |
| CITY OF SAN ANTONIO | § | |
| *Defendants,* | § | |

**ORDER**

CAME ON THIS DAY TO BE HEARD **Defendant Jesse Noriega's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(c) and/or Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56** and upon consideration of said Motion, the papers in this cause and the relevant law, it being deemed that good cause exists for granting same;

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that **Defendant Jesse Noriega's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(c) and/or Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56** is hereby GRANTED.  All claims as to Defendant are dismissed with prejudice.  This is a Final Judgment.

Signed this _____ day of _____, 2023.

_____
JASON K. PULLIAM
UNITED STATES DISTRICT JUDGE