UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**ALEXANDER LANCE,**

*Plaintiff*,

**v.**                                          **Case No.  SA-21-CV-00837-JKP**

**CITY OF SAN ANTONIO, RODOLFO
CONTERO, #3297; JAMES YBARRA,
#0855; JESSE NORIEGA, #0989;
EDWIN TURNER, #1385; JONATHAN
REYES, #1470; MARSHALL DAVIS,
#0152; PERLA DOMINGUEZ, #0798;
DREW REYES, #0679; CODY
HAEGELIN, #0795; AND VALENTIN
FIGUEROA, #0176;**

*Defendants*.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant City of San Antonio's Motion for Summary Judgment, Defendant Officer Jesse Noriega's Motion for Summary Judgment, and the remaining Defendant Officers' Motion for Summary Judgment. *See* ECF Nos. 66, 68, 69. Plaintiff Alexander Lance filed responses to the motions and the Defendants filed replies to Lance's responses. *See* ECF Nos. 71, 72, 73, 74, 78, 79. After due consideration of the parties' briefings, the record evidence, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** Officer Noriega's Motion for Summary Judgment (ECF No. 68), **GRANTS** the remaining officers' Motion for Summary Judgment (ECF No. 69), and **GRANTS** San Antonio's Motion for Summary Judgment (ECF No. 66). Lance's excessive force claim against Officer Noriega shall proceed. All other claims and defendants are **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

This case arises from a 10:19 p.m., May 30, 2020, encounter between police and civilian Plaintiff Alexander Lance, who was in downtown San Antonio protesting George Floyd's killing when he was shot by Defendant Officer Jesse Noriega in the arm and leg with sponge rounds. Lance and two friends, Xavier Sanchez and Trevor Pike, had just left a demonstration at Alamo Plaza where officers were firing tear gas into the crowd. The three men reconvened at Sanchez's Honda Accord, at the northwest corner of College and North Presa Streets, using bottled water from the Honda's open trunk to wash the tear gas off their faces. In comparison to the scene at Alamo Plaza, the intersection was relatively calm, with few people present. The three men observed a group of police officers wearing riot gear and gas masks, advancing down North Presa Street in a v-shaped formation, followed by two black Chevrolet Suburban trucks. The SWAT team had just been dispatched to a location further down North Presa Street, coming from a chaotic scene on Houston Street where civilians were throwing bricks and frozen water bottles at police. Lance began filming the SWAT team with his iPhone, which he was holding up, with the light on, in his left hand. In addition to Lance's iPhone footage, at least five police officers recorded the encounter with their body worn cameras. The Court reviewed these videos and relies on them to describe what transpired next.

When officers pointed their guns at a passing civilian vehicle, Lance's friend Pike can be heard on video saying, "There's no reason to point a gun. There's no reason to point a gun. It's a car." Lance then shouted, "That bitch better be on safety. That's all I'm saying." At that point, Officer Noriega, who was on the opposite side of the street, turned and walked towards Lance, weapon drawn.[1] Two seconds later Officer Noriega, who says he believed Lance was about to

---

[1] Officer Noriega later reported he was carrying a SAGE 40mm launcher loaded with "less lethal" 6325LE sponge rounds.

throw something at the officers, discharged the weapon, hitting Lance in the right forearm. Officer Noriega says he warned Lance to put his hands up before discharging the weapon, but the video evidence is inconclusive on this point. Officer Noriega then tried grabbing Lance, and Lance jerked away. Lance shouted, "Ow, motherfucker. I had a fucking cigarette. I had a fucking cigarette. I had a fucking cigarette, yo." At the same time, multiple people can be heard repeatedly saying, "Hands up!" Lance's friends, Sanchez and Pike, both raised their hands and backed away from the officers. Lance briefly raised his hands but then put them back down, taking several steps away from Officer Noriega, towards Sanchez's Honda, and saying, "Fuck. Motherfucker [unintelligible]. Look at that, motherfucker, you fucking shot me, motherfucker." Lance then slowly took a few steps forward, in Officer Noriega's direction. Officer Noriega discharged a second round, striking Lance's left leg. Ten seconds elapsed between the first and second shots. Sergeant Contero, who was leading the SWAT team, can be heard encouraging the officers to leave the scene, shouting several times, "Jesse!" and "Let's go!" Officer Noriega and the other officers obeyed Sergeant Contero's command and advanced further down the street, leaving Lance and his friends behind. Lance can be heard on video yelling that he was "bleeding" and saying the officers "got" him. The entire encounter lasted approximately 41 seconds.

San Antonio Police Department (SAPD) opened an investigation into Officer Noriega's use of force after video footage of the incident went viral on social media. SAPD Captain Miles Earwood conducted an initial investigation, concluding Officer Noriega's use of force was "reasonable and commensurate" to Lance's non-compliance; however, Captain Earwood recommended the incident be forwarded to Internal Affairs for administrative review "given the concerns raised by members of our community, and the need to provide transparency of police

operations." *See* ECF No. 72-10. Internal Affairs Investigator Sergeant Grant Windsor collected documents and reviewed video evidence, presenting his findings to the Complaint and Administrative Review Board (CARB), which is comprised of seven civilian members and seven uniformed SAPD officers. *See* ECF No. 66-1 at 121. CARB reviews the file, hears any presentation and testimony at the hearing, then votes on whether the allegation is sustained, unfounded, justified, or inconclusive. CARB members make recommendations to the Chief of Police, who makes the final decision on each case under investigation.

On August 19, 2020, CARB met to evaluate the use and application of force by Officer Noriega. *Id*. at 696-98. A majority of CARB members found allegations pertaining to the first sponge round to be "unfounded." *Id*. A majority of CARB members found allegations pertaining to the second sponge round to be "justified." *Id*. That is, the CARB found the complaint to be justified in alleging Officer Noriega fired a second round "after [Lance] had created distance between him and Officer Noriega and appeared to be providing only passive resistance and verbal provocation." *Id*. at 123. No discipline was recommended.[2] *See* ECF No. 73 at 9.

Lance brings this § 1983 civil rights action against the City of San Antonio and its officers, alleging Officer Noriega is liable for violating Lance's Fourth Amendment rights by engaging in excessive and objectively unreasonable force, Officer Noriega and the remaining officers are liable for failing to render medical aid to Lance, and the City is subject to municipal liability. *See* ECF No. 28 (Lance's Third Amended Complaint). All Defendants request the Court enter summary judgment in their favor. For the reasons discussed herein, the Court finds Officer Noriega is not entitled to qualified immunity on Lance's excessive force claim. The Court further finds Officer Noriega and the remaining officers are entitled to qualified immunity on Lance's

---

[2] The City of San Antonio notes Officer Noriega received a written reprimand, but only for failing to activate his body worn camera. SAPD does not consider written reprimands to be disciplinary action. *See* ECF No. 66 at 13, 20.

failure to administer medical care claim, and the record evidence is insufficient to establish the City's liability. The Court, therefore, allows only Lance's excessive force claim against Officer Noriega to proceed. The Court dismisses all other claims and defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "As to materiality, the substantive law will identify which facts are material" and a fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a dispute over a material fact qualifies as "genuine" within the meaning of Rule 56. *Id.* Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

In determining whether to grant summary judgment, the courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Id.* Furthermore, the courts have "no duty to

---

[3]Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. at 381. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. However, "to the extent that any material fact dispute remains after viewing the facts in light of the available video evidence, the court should deny summary judgment on grounds of qualified immunity." *Bagley v. Guillen*, — F.4th —, 2024 WL 107888 at *1 (5th Cir. 2024).

Generally, the affirmative defense of qualified immunity is an immunity from suit and shields a government official for actions within their discretionary authority when their conduct complies with clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). Determination of the applicability of the qualified immunity defense requires two inquiries: (1) whether the official's conduct violated a clearly established constitutional right or statute, and (2) whether the official's conduct was objectively unreasonable under clearly established law existing at the time of the incident of which a reasonable person would have known. *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1783 (2023); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). If the Court answers both questions in the affirmative, the government official is not shielded from liability based upon qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232, (2009); *Buehler v. Dear*, 27 F.4th 969, 981–82 (5th Cir. 2022). A court need not analyze these prongs

6

sequentially because if either is not satisfied, the government official is entitled to qualified immunity. *Buehler*, 27 F.4th at 981–82. Still, the Fifth Circuit provides guidance that although a district court may "'leapfrog' the first prong and resolve cases solely on the basis that defendants' conduct—even if unlawful—did not violate clearly established law, 'we think it better to address both steps in order to provide clarity and guidance for officers and courts.'" *Id*. at 981–82.

Although not presumed, when a defendant asserts the qualified-immunity affirmative defense, the burden of proving the affirmative of both prongs falls upon the plaintiff. *Buehler*, 27 F.4th at 981–82; *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Consequently, when a government official asserts qualified immunity upon summary judgment, this assertion shifts the typical summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d at 253; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Instead, the summary-judgment initial burden falls on the plaintiff to demonstrate the inapplicability of qualified immunity by establishing a genuine dispute of material fact on both prongs of the inquiry. *Brown v. Callahan*, 623 F.3d at 252–53; *Poole*, 691 F.3d at 627–28. All inferences are still drawn in the plaintiff's favor. *Brown v. Callahan*, 623 F.3d at 253.

With regard to the first inquiry, the plaintiff must show there is a genuine dispute of material fact whether the defendant violated a constitutional right—that is, a jury could return a verdict entitling the plaintiff to relief for a constitutional injury. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). Because the summary-judgment initial burden falls on the plaintiff to demonstrate a genuine dispute of material fact on both prongs of the inquiry, if the Court determines there is not a genuine dispute whether the alleged conduct violated a constitutional right, the official is entitled to qualified immunity upon summary judgment. *Buehler*, 27 F.4th at

981–82; *Poole*, 691 F.3d at 627–28; *Shepard v. Hansford Cnty.*, 110 F. Supp. 3d 696, 707–08 (N.D. Tex. 2015).[4]

With regard to the second inquiry, the plaintiff "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law." *Tucker v. City of Shreveport*, 998 F.3d 165, 172–73 (5th Cir. 2021), *cert. denied sub nom.*, *Tucker v. City of Shreveport, Louisiana*, 142 S. Ct. 419 (2021); *Gates v. Texas Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). The plaintiff has the burden to point out clearly established law, and the Court asks whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the alleged constitutional violation. *See Freeman*, 483 F.3d at 411; *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019).

To meet this burden, the plaintiff need not identify a specific case, but a body of relevant caselaw in which an officer acting under similar circumstances was held to have violated the Constitution. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)). While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id*. This leaves the rare possibility that, in an obvious case, analogous caselaw is not needed because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Id*.

---

[4] The Court does recognize that some well-cited caselaw states the inquiry differently as: "the threshold 'constitutional violation question' [is] whether … the officer's alleged conduct violated a constitutional right…. If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because *there is no constitutional violation for which the government official would need qualified immunity*." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (emphasis added).

## ANALYSIS

Lance asserts § 1983 claims against Officer Noriega for use of excessive force and failure to administer medical care, against the remaining defendant officers for failure to administer medical care, and against the City of San Antonio for its municipal liability. Because Lance's failure to administer medical care claim against Officer Noriega is based on the same facts as Lance's claims against the other defendant officers, the Court will consider them all together in one section. The Court begins its analysis with the crux of Lance's case, his excessive force claim against Officer Noriega.

### I.    Excessive Force Claim Against Officer Noriega

Officer Noriega asserts qualified immunity precludes Lance's § 1983 Fourth Amendment[5] excessive force claim against him. Consequently, the burden falls upon Lance to raise a genuine dispute of material fact on both inquiries of the qualified immunity defense. In this case, Lance alleges Officer Noriega violated his Fourth Amendment right to be free from unreasonable search and seizure by using excessive and objectively unreasonable force in shooting Lance twice with sponge rounds. Lance further cites caselaw showing it would have been clear to a reasonable officer in Officer Noriega's position that deploying intermediate force under these circumstances was unreasonable.

The Fourth Amendment confers a right to be free from excessive force during the "seizure" of a person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). An officer seizes a person when he, "by means of physical force or show of authority, has in some way restrained the

---

[5] Officer Noriega reads Lance's complaint to assert a standalone substantive due process claim under the Fourteenth Amendment, which Officer Noriega argues should be dismissed as precluded by Lance's Fourth Amendment claim. *See* ECF No. 68 at 11. The Court interprets Lance's complaint to assert an excessive force claim under the Fourth Amendment, as applied to the states under the Fourteenth Amendment. In any event, Lance does not address Officer Noriega's argument regarding a standalone Fourteenth Amendment claim; therefore, any such claim, if it was ever asserted, is abandoned. *See Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

liberty of a citizen." *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). In the context of constitutional law, seizures—including certain police uses of force—are regulated by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388 (1989). At the first inquiry of the qualified immunity analysis, a plaintiff must present a genuine dispute of material fact whether the official violated their Fourth Amendment right by using excessive force. To demonstrate constitutional injury due to the use of excessive force, a plaintiff must show: (1) the plaintiff suffered a physical injury (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). Consequently, to satisfy their summary-judgment burden on the first qualified immunity inquiry, a plaintiff must raise a genuine dispute of material fact on each element to raise a genuine dispute as to whether they suffered a constitutional injury.

The parties do not dispute that Lance suffered an injury: the video evidence shows that after being shot with two sponge rounds Lance sustained bleeding, three-inch welts on his right arm and left leg. According to Lance's deposition testimony, he was hospitalized for three days after the incident, and diagnosed with a hairline fracture in his arm which required him to wear a sling for more than a month and caused weekly pain three years after the injury. He says the wound to his leg required stitches and immobilized him for over a month. He further reports the incident impeded his ability to work and caused him mental anguish, triggering anxiety, depression, paranoia, and alcoholism. In order to sustain an excessive force cause of action, the plaintiff's alleged injury must be more than *de minimis*. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Here, Lance has provided sufficient evidence of his injury to meet that standard. Moreover, the Fifth Circuit has found that "as long as a plaintiff has suffered some

injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Solis v. Serrett*, 31 F.4th 975, 982 (5th Cir. 2022) (internal quotes omitted). The relevant inquiry in this case, therefore, is whether Officer Noriega's use of force was clearly excessive and objectively unreasonable. These inquiries are "often intertwined." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

Fourth Amendment excessive-force jurisprudence recognizes an official's seizure of a person necessarily carries with it the discretion to use some degree of physical coercion or threat thereof to effect the seizure. *Tucker*, 998 F.3d at 171 (citing *Graham*, 490 U.S. at 396). If the official's conduct was lawful under the circumstances, the plaintiff does not suffer a constitutional injury even if the conduct resulted in significant injury or death. Consequently, this inquiry necessarily involves determination whether the force used was reasonable under the circumstances. *Graham*, 490 U.S. at 396; *Frank et al. v. Parnell et al.*, 2023 WL 5814938, at *3 (5th Cir. 2023). Although a reasonableness inquiry usually falls within the province of a jury, when applicable to a qualified-immunity analysis within an excessive-force claim, the reasonableness inquiry is objective and decided as a matter of law. *Id.*

Determining whether the force used to effect a particular seizure is "reasonable" for purposes of the Fourth Amendment requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396; *Frank*, 2023 WL 5814938, at *3; *Tucker*, 998 F.3d at 171. Thus, whether the force used was unlawfully excessive, that is, objectively unreasonable, depends on the facts and circumstances of each particular case. *Frank*, 2023 WL 5814938, at *3; *Harmon v. City of Arlington*, 16 F.4th 1159, 1164 (5th Cir. 2021). In this context, the question is whether the

officer's actions are objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham*, 490 U.S. at 396; *Frank*, 2023 WL 5814938, at *3; *Tucker*, 998 F.3d at 171. Although all disputed facts are construed in favor of the non-movant in the summary judgment context, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396; *Griggs v. Brewer*, 841 F.3d 308, 313–14 (5th Cir. 2016).

Courts view an officer's actions within the totality of the circumstances to determine objective reasonableness, using the factors established in *Graham*, to the extent they apply: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Frank*, 2023 WL 5814938, at *3; *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 728–31 (5th Cir. 2018). With regard to whether the suspect poses an immediate threat, a court should consider "the speed with which an officer resorts to force where officers deliberately, and rapidly, eschew lesser responses when such means are plainly available and obviously recommended by the situation." *Crane v. City of Arlington*, 50 F.4th 453, 464 (5th Cir. 2022) (citing *Harmon*, 16 F.4th at 1165). "The court can also consider 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Frank*, 2023 WL 5814938, at *3 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

In a case involving the use of deadly force, the objective reasonableness balancing test is, again, modified. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018); *Flores v. City of Palacios*, 381 F.3d 391, 398–99 (5th Cir. 2004) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). While all factors are relevant, the court's focus is primarily on the second *Graham* factor: whether the suspect poses an immediate threat to the safety of the officer or others. *Harmon*, 16 F.4th at 1163; *Romero*, 888 F.3d at 176. In such an instance, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Harmon*, 16 F.4th at 1163; *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). An officer's conduct is objectively reasonable if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Harmon*, 16 F.4th at 1163; *Romero v. City of Grapevine, Tex.*, 888 F.3d at 176 (quoting *Garner*, 471 U.S. at 11).

According to Lance, Officer Noriega unreasonably and excessively responded to Lance's verbal provocation that, "That bitch better be on safety," by shooting Lance twice with sponge rounds. Officer Noriega counters that his use of force was justified because Lance was: (1) about to throw something at officers, (2) not obeying commands to put his hands up, (3) attempting to evade arrest after the first shot, and (4) advancing on officers in a threatening manner. Typically, when considering whether to grant summary judgment, the Court views all facts and reasonable inferences in the light most favorable to the non-movant—here, Lance. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d at 234 (5th Cir. 2016). However, in a case such as this where the evidence includes sufficiently viewable and reliable video of the incident at issue, the Court must view the facts in the light depicted by the recordings of the incident. *Scott v. Harris*, 550 U.S. at 380–81. After reviewing the video evidence, the Court finds the video evidence does not unambiguously

support Officer Noriega's version of events. The Court, therefore, reviews all facts and reasonable inferences in the light most favorable to Lance, finding material fact disputes remain as to each of the *Graham* factors and denial of summary judgment is proper.

### A.    Review of the Video Evidence

According to Lance, at approximately 10:19 p.m. on May 30, 2020, Lance was recording SWAT officers with an iPhone in his left hand, smoking a cigarette with his right hand, and verbally heckling officers by saying, "That bitch better be on safety," when Officer Noriega, without warning, advanced with his SAGE launcher drawn and fired two rounds, hitting Lance in the right arm and left leg. Officer Noriega says he fired the first round because he believed Lance was about to assault officers by throwing something at them. Officer Noriega further asserts he fired the second round because Lance had attempted to evade arrest by slipping out of his grasp and, after initially backing away from officers, advancing towards them. In assessing the parties' differing versions of events, the Court begins by reviewing the available video evidence.

Officer Noriega says he believes Lance was about to assault officers by throwing something at them because, after Lance said "That bitch better be on safety," Lance's friends stepped behind Lance to give him room to throw something, Lance "bladed" (angled) his body as if he was getting ready to throw something, and Lance obstructed his right hand behind his leg and a flannel shirt draped over his shoulders, so that Officer Noriega could not see what Lance was holding. The video evidence does not conclusively support Officer Noriega's version of events. It shows Lance standing on the street corner, holding up his lit iPhone in his left hand, with his right hand down by his side. His body is not clearly "bladed" as if he is about to throw something. Furthermore, while his friends are standing behind him, it is not clear that they moved out of the way to give him room to throw something. What, if anything, Lance was

holding in his right hand is also not clear from the video evidence. Lance says the object was a figment of Officer Noriega's imagination, however, in the video recordings Lance can be heard saying he "had a fucking a cigarette" after being shot in the arm. This seems to be an admission by Lance that he was holding something with his right hand, if only a cigarette. Moreover, Officer Noriega notes, and the Court confirms, Officer Ybarra's body worn camera captured the sound of something metal hitting the ground after the first shot was fired. *See* Ofc. Ybarra BWC at :14. The video also shows something black on the ground by Lance's foot. *Id*. at :16-17. The video does not clearly show, however, that the black object was in Lance's hand, nor does it show that Lance dropped it. Additionally, neither party provides evidence of what the black object was. Whether Lance was holding something in his right hand that he intended to throw at officers is, therefore, unclear from the video evidence.

The parties also disagree as to whether Lance disobeyed orders to put his hands up before Officer Noriega shot him. Lance says Officer Noriega fired without warning. Officer Noriega alleges, before firing the first round, he told Lance to show his hands. The video evidence is again inconclusive. Lance's iPhone footage shows Lance saying, "That bitch better be on safety" at :11-:13. *See* Lance iPhone footage. Lance then turns his iPhone camera toward Officer Noriega, who can be seen advancing toward Lance, SAGE launcher drawn. *Id*. Within two seconds, Lance says, "Yeah you," Officer Noriega fires, and Lance shouts "Ow!" *Id*. at :15-:16. Before the first shot was fired, a voice can faintly be heard on the video saying "hands," but whether this was Officer Noriega giving Lance a command to put his hands up is unclear. Officer Noriega's voice was likely muffled by the gas mask he was wearing. Furthermore, the short period of time that elapsed between Lance saying, "That bitch better be on safety," and Officer Noriega firing his weapon—two seconds—was not enough time for Lance to respond to

a command if it was issued. The Court, therefore, finds the question of whether Lance disobeyed Officer Noriega's command to put his hands up is unresolved by the video evidence.

Officer Noriega further argues the second shot was justified because Lance attempted to evade arrest, disobeyed commands, and advanced on officers. The parties do not dispute that after the first shot, Officer Noriega attempted to grab Lance and Lance pulled away. In his deposition testimony, Lance says this was a knee jerk reaction to having just been shot, and it was not clear to him that Officer Noriega was attempting to arrest him. Indeed, Officer Noriega gave no verbal commands suggesting Lance was under arrest. After pulling away, Lance turned and slowly walked away from the officers, in the direction of the Honda, while cursing. Several individuals can be heard on video saying, "Hands up!" Lance says his friends were giving the command, Officer Noriega says it was officers. The video evidence does not conclusively reveal who was speaking. Either way, Lance's friends raised their hands and Lance briefly raised his, then brought them back down again. Lance was preoccupied by the wound on his right arm, cursing at officers for shooting him, and recording a video of his wounded arm with his iPhone. Lance then took a few slow steps forward, in the direction of officers, and Officer Noriega shot him a second time. Ten seconds elapsed between the first and second shots. *See* Lance iPhone footage at :16-:26. This portion of the video footage shows Lance stunned and disoriented from being shot. While he is cursing at officers and not raising his hands, he is also not holding anything other than his iPhone. Lance explained in his deposition testimony that raising his right arm hurt because it was wounded. The video does not show Lance attempting to flee or acting in a threatening manner. The video evidence, therefore, does not unambiguously support Officer Noriega's version of events leading up to the second shot.

The Court finds, based on its review of the available video evidence, Lance's story is not "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. at 380. The Court, therefore, declines to adopt Officer Noreiga's version of events and considers the *Graham* factors applying the typical summary judgment standard—that is, considering all facts and reasonable inferences in the light most favorable to Lance.

**B.    Application of the *Graham* Factors**

**i.    Severity of the crime at issue**

The parties dispute whether Lance was engaged in a crime justifying Officer Noriega's use of force. Lance says Officer Noriega did not reasonably believe Lance was engaged in a crime or attempting to engage in a crime when he fired his SAGE launcher. Officer Noriega says Lance was engaged in two crimes: attempting to assault officers by throwing something at them, before the first shot, and attempting to evade or resist arrest, before the second shot. *See* Tex. Penal Code §§ 22.01(b-2), 38.04(a)-(b). Indeed, if Lance engaged in these crimes, they would be sufficiently severe to support Officer Noriega's qualified immunity defense. Assaulting a peace officer is a felony offense which has been recognized as a crime weighing against a finding of excessive force. *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018). Officer Noriega cites no direct authority for his argument that evading or resisting arrest is sufficiently serious to weigh against a finding of excessive force; however, he argues that because a DUI is considered a serious offense for the purposes of the *Graham* analysis, evading or resisting arrest should also be. *See Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). This is a logical conclusion, however, based on the record before it, the Court cannot conclusively say whether Office Noriega reasonably believed Lance was engaged in either attempted assault or resisting or evading arrest.

For the reasons discussed above, the video evidence does not unambiguously show whether Lance was attempting to assault police officers when Officer Noriega shot him. The evidence is similarly inconclusive as to whether Lance was resisting arrest when he escaped Officer Noriega's grasp. Officer Noriega points to authority finding that pulling out of an officer's grasp is sufficient to constitute resisting arrest under Tex. Penal Code § 38.03. *See Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013). The line of cases cited by *Ramirez v. Martinez*, however, examines whether pulling out of an officer's grasp, as opposed to some other, presumably more aggressive form of resistance, is sufficient for a finding of resistance under the penal code. That is not the fact at issue in this case. Lance challenges whether Officer Noriega intended to arrest Lance at all. Given that Officer Noriega made no statements suggesting Lance was under arrest, Lance walked away from Officer Noriega slowly after the encounter, without being challenged by Officer Noriega, and Officer Noriega ultimately left the scene without attempting to arrest Lance, there is a fact issue as to whether Officer Noriega ever intended to arrest Lance. Taking the facts in the light most favorable to Lance, the first *Graham* factor favors denial of summary judgment because material issues of fact remain unresolved.

### ii.      Immediate threat of serious physical harm

Next the Court examines the second *Graham* factor, whether Lance posed an immediate threat of bodily harm to the officers or others. The objectively-reasonable analysis allows for the fact that officers must make split-second judgments in circumstances that are tense, uncertain and rapidly evolving. *Graham*, 490 U.S. at 396–97. When making the determination as to whether the officer had probable cause to believe a suspect posed a threat of serious harm to either the officer or others, courts consider the totality of the circumstances as perceived by a reasonable officer on the scene. *Id.*; *Hatcher v. Bement*, 676 F.App'x. 238, 243 (5th Cir. 2017).

Here, Officer Noriega emphasizes the tense situation which gave rise to his encounter with Lance. Prior to advancing down North Presa Street, the SWAT team encountered a chaotic scene on Houston Street where civilians were throwing bricks, frozen water bottles, and other hard objects at police. Officer Noriega says he was personally hit with a hard object in the shoulder during the incident. He therefore says he was reasonable in believing that Lance and his friends, who were standing near a Honda with an open trunk, intended to throw objects from the trunk at officers. Officer Noriega further suggests Lance's clothing was suspicious: Lance was wearing a tactical belt, a white cloth wrapped around his wrist, and a flannel shirt draped over his shoulders. Officer Noriega says this clothing, combined with Lance's threatening statement— "That bitch better be on safety"—and Lance blading his body and hiding his right hand, led Officer Noriega to believe Lance was about to throw something at officers. While these facts provide some evidence of why Officer Noriega was suspicious of Lance, they do not rise to the level of establishing, from an objective standpoint, Lance posed an immediate threat of bodily harm.

As the Court noted above, the video evidence does not show Lance "blading" his body to throw something. Nor does the video evidence establish whether the black item shown on the ground in Officer Ybarra's bodycam video was something Lance had been holding and preparing to throw at officers before Officer Noriega shot him. Also unclear is whether Officer Noriega gave Lance a verbal command to put his hands up. Absent these facts, the remaining facts do not conclusively support Officer Noriega's version of events. Officer Noriega's suspicion that the Honda's open trunk was filled with items the men intended to throw at officers is just that, a suspicion. Officer Noriega acknowledges he never saw Lance or his friends throw anything at officers, either during the encounter on College and North Presa Streets or earlier in the night.

Furthermore, Lance's clothing was not particularly suspicious. Officer Noriega does not say why the flannel shirt and white cloth around Lance's wrist caused concern. Lance explained in his deposition that the white cloth was a gaiter mask he was wearing earlier in the day for COVID protection, something many people were doing at the time. The tactical pouch Lance was wearing contained medical equipment, which Lance can be heard announcing at the beginning of his iPhone footage ("I got medical right here." *See* Lance iPhone footage at :02.). While carrying medical equipment is some evidence an individual expects to encounter violence, it is not evidence the person intends to perpetuate violence. Indeed, Lance ultimately used his medical equipment to bandage his own leg after Officer Noriega shot him and the officers left the scene.

Furthermore, in assessing whether an immediate threat was present, courts account for "the speed with which an officer resorts to force" and whether "lesser responses" eschewed were "plainly available and obviously recommended by the situation." *Crane v. City of Arlington*, 50 F.4th at 464. Here, Officer Noriega shot Lance two seconds after Lance commented about the gun being on safety—and then shot him again ten seconds later. *See* Lance iPhone footage at :16-:26. This quick escalation of force left no opportunity for lesser responses plainly available and obviously recommended by the situation. Officer Noriega was protected in full riot gear, armed with his SAGE launcher and a handgun, surrounded by his SWAT team members who were similarly protected and armed, and backed up by two Chevrolet Suburban trucks. Even if Lance was planning to throw something at officers, as civilians on Houston Street had earlier that night, the SWAT team was well protected. Indeed, the SWAT team did not fire on civilians who were actively throwing things at them on Houston Street. Furthermore, the other SWAT team officers on the scene at College and North Presa Streets can be shown pointing their weapons at the ground throughout the encounter with Lance, suggesting they did not perceive the same

threat Officer Noriega says he did. Those same officers walked past Lance and his friends moments before Lance's encounter with Officer Noriega, without incident.

Even if, as Officer Noriega suggests, Officer Noriega's first shot was justified because Lance was about to throw something at officers, the second shot would be excessive if the ultimate factfinder determines Lance was no longer resisting and did not pose an immediate threat. Officers may use force in ways "that corresponded to [a suspect's] escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). But where a suspect initially resists, force "must be reduced once [he] has been subdued." *Joseph*, 981 F.3d at 335. Once a suspect is "subdued" and "no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). *See also Joseph*, 981 F.3d at 341. In this case, the ultimate factfinder might find that after Officer Noriega fired the first shot, Lance became subdued. The video evidence shows Lance's right hand was empty after the first shot. Furthermore, Lance created distance between himself and the officers by walking towards the Honda. As discussed above, whether Lance slipping from Officer Noriega's grasp, failing to keep his hands up, and taking steps forward constitutes active resistance is a question of fact for the jury.

For these reasons, the second *Graham* factor militates against a finding that Lance's seizure was reasonable as a matter of law.[6]

---

[6] Lance offers evidence Officer Noriega engaged in deadly force by using his SAGE launcher at a distance closer than the distance recommended for "less lethal" use of force. In a case involving the use of deadly force, the objective reasonableness balancing test is modified to focus primarily on the second *Graham* factor. *Harmon*, 16 F.4th at 1163; *Romero*, 888 F.3d at 176. How close Officer Noriega was to Lance when he fired two rounds is a fact-intensive inquiry best resolved by the ultimate factfinder. The Court need not reach the question, however, because it finds the first and third *Graham* factors, like the second *Graham* factor, lean in favor of Lance's position.

### iii.     Suspect actively resisting arrest or attempting to evade arrest by flight

For the reasons discussed above, the third *Graham* factor also favors denial of summary judgment. The record evidence does not conclusively show whether Lance was resisting arrest when he escaped Officer Noriega's grasp, creating a fact issue best resolved by the ultimate factfinder. Because the Court finds genuine disputes of material fact regarding each of the *Graham* factors, the Court concludes Lance has met his burden to overcome Officer Noriega's qualified immunity defense as to the first prong—that is, as to the alleged Fourth Amendment violation. The Court now turns its attention to the second prong, whether Officer Noriega's actions were objectively unreasonable in light of clearly established law at the time of the shooting.

### C.     Clearly Established Law

In an excessive-force case, the second inquiry of the qualified immunity analysis itself encompasses two separate inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tucker*, 998 F.3d at 172 (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) and *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002)). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Tucker*, 998 F.3d at 172 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Tucker*, 998 F.3d at 172–173 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Even if genuine disputes of material fact exist concerning

the Fourth Amendment violation (first inquiry), Officer Noriega is entitled to qualified immunity unless his actions were objectively unreasonable in light of clearly established law at the time of the shooting. The critical question when ascertaining the clearly established law is "whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Id.* "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021).

With qualified immunity, the question of whether clearly established law existed is *not* to be determined with general caselaw. *Tucker*, 998 F.3d at 173 (citing *Mullenix v. Luna*, 577 U.S. 7, 12–14 (2015)). "[Q]ualified immunity protects actions in the 'hazy border between excessive and acceptable force.'" *Mullenix*, 577 U.S. at 18 (quoting *Brosseau*, 543 U.S. at 201 and *Saucier*, 533 U.S. at 206). Sufficiently specific "[p]recedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Thus, qualified immunity "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau*, 543 U.S. at 198.

"The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby*, 583 U.S. 48, 63–64. Under this guidance, "[q]ualified immunity is justified unless *no* reasonable officer could have acted as [the defendant officer] did here, or *every* reasonable officer faced with the same facts would *not* have [acted as the defendant officer did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019), *cert.*

*denied*, 41 S. Ct. 116 (2020); *Tucker*, 998 F.3d at 174–75. Thus, to defeat summary judgment within the second inquiry of the qualified immunity analysis, a plaintiff must point to specific caselaw holding every reasonable officer acting under similar circumstances would not have acted as Officer Noriega did in this case.

Under clearly established law, and viewing the facts in the light most favorable to Lance, a reasonable officer in Officer Noriega's position would have known that deploying intermediate force against Lance, when Lance was not resisting arrest or otherwise posing a threat, was unreasonable. At the time of the conduct in question, it was clearly established that an officer may not use force on a suspect whose "behavior [does] not rise to the level of active resistance." *See*, *e.g.*, *Darden v. City of Fort Worth*, 880 F.3d 722, 728–30 (5th Cir. 2018). Here, Lance has met his summary judgment burden to create a fact issue as to whether he was resisting arrest or otherwise posing a threat. Lance further creates a fact issue as to whether an objectively reasonable officer would have acted as Officer Noriega did, where the other SWAT team officers on the scene walked past Lance and his friends without incident and were pointing their weapons at the ground throughout Officer Noriega's encounter with Lance, suggesting they did not perceive the same threat Officer Noriega says he did. Lance offers several cases analogous to the case at bar in which officers' qualified immunity defenses were denied when they used intermediate force in similar circumstances. *See, e.g., Autin v. City of Baytown*, 174 F. App'x 183, 185–86 (5th Cir. 2005) (affirming denial of qualified immunity where the officer tased a plaintiff multiple times and the plaintiff was, at most, committing the minor crime of criminal mischief, was not a threat to the officers or others, and was not resisting arrest); *Newman v. Guedry*, 703 F.3d 757, 762–63 (5th Cir. 2012) (concluding the officers' tasing of the plaintiff was objectively unreasonable where the plaintiff was pulled over for a minor traffic stop, did not

attempt to flee, and did not present a serious threat); *Massey v. Wharton*, 477 F. App'x 256, 263 (5th Cir. 2012) (affirming denial of qualified immunity to officer who tased the plaintiff twice and pepper sprayed him, even though the plaintiff was not a threat to the officers, was not attempting to flee, and was driving away at the officer's command). Most recently, the Fifth Circuit in *Bagley v. Guillen* held that, "it may be objectively reasonable under certain circumstances for police officers to use physical force when a person refuses to comply with an officer's lawful commands—but not after that person has begun to comply." 2024 WL 107888 at *1.[7] Similarly, in this case, even if the ultimate factfinder finds Lance disobeyed Officer Noriega's initial command to put his hands up—and Lance has created a fact issue on that point—Lance offers evidence showing he no longer posed a threat when Officer Noriega fired the second round.

The Court, therefore, finds (1) Lance presented sufficient evidence of excessive force to defeat Officer Noriega's qualified immunity defense at the summary judgment stage; and (2) the law was clearly established at the time of the incident such that Officer Noriega's alleged conduct was objectively unreasonable in light of clearly established law. The Court denies Officer Noriega's summary judgment motion on Lance's Fourth Amendment excessive force claim.

## II.   Officers' Alleged Failure to Administer Medical Care

Lance brings claims against Officer Noriega and the remaining defendant officers for failing to administer medical care after Officer Noriega shot him. The Fourteenth Amendment bars law enforcement from responding to a detainee's serious medical needs with deliberate

---

[7] Though the *Bagley v. Guillen* case was published in 2024, the law supporting that opinion was clearly established in 2019, a year before the events giving rise to this action.

indifference. *Farmer v. Brennen*, 511 U.S. 825, 828 (1994).[8] To establish liability based on a failure to administer medical treatment, a plaintiff must show the Defendant officers (1) "had subjective knowledge of a substantial risk of serious harm to the detainee due to a serious medical need" and (2) "responded to that risk with deliberate indifference." *Cope v. Cogdill*, 3 F.4th 198, 206–07 (5th Cir. 2021) (citation omitted). Under the first prong, "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is needed." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Under the second prong, a plaintiff can show deliberate indifference by introducing evidence that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). Although deliberate indifference requires egregious conduct, a plaintiff need not prove that the official acted with the intent to cause harm. *Cope v. Cogdill*, 3 F.4th at 207 (citing *Farmer v. Brennan*, 511 U.S. at 835). Nevertheless, "deliberate indifference" sets "an extremely high standard to meet." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted).

The defendant officers assert they are entitled to qualified immunity on Lance's claim for failure to administer medical care. As with Lance's excessive force claim, the burden shifts to Lance to overcome the officers' qualified immunity defense by offering competent summary judgment evidence showing: (1) the defendant officers' conduct violated a clearly established constitutional right or statute, and (2) the defendant officers' conduct was objectively unreasonable under clearly established law existing at the time of the incident of which a

---

[8] Defendants argue Lance's right to medical care is not triggered under the Fourteenth Amendment because he was never a "detainee" taken into police custody. *See DeShaney v. Winnebago Cnty DSS*, 489 U.S. 189, 200 (1989). Lance takes the position that Officer Noriega's use of force constitutes a Fourth Amendment "seizure" giving rise to a right to medical care. *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The Court need not resolve the issue because, assuming Lance does have a legitimate claim, Lance fails to meet his summary judgment burden.

reasonable officer would have known. *Bey v. Prator*, 53 F.4th at 857; *Goodman v. Harris Cnty.*, 571 F.3d at 395. Here, Lance has failed to meet his burden to establish a genuine dispute of material fact sufficient to overcome the officers' qualified immunity defense.

As to the first prong of the qualified immunity analysis, Lance must proffer competent summary judgment evidence showing the defendant officers: (1) "had subjective knowledge of a substantial risk of serious harm to [Lance] due to a serious medical need" and (2) "responded to that risk with deliberate indifference." *Cope v. Cogdill*, 3 F.4th at 206–07. The risk of harm must be "so apparent that even laymen would recognize that care is needed." *Gobert v. Caldwell*, 463 F.3d at 345 n.12. Lance points to video evidence that, after being shot with the sponge rounds, he was cursing and visibly bleeding. He further offers evidence that Officer Noriega shot him with the SAGE launcher at a range closer than the recommended range for "less lethal" use of force. This evidence, while establishing the officers knew Lance was injured, does not establish they knew he was "at substantial risk of harm … due to a serious medical need." *Cope v. Cogdill*, 3 F.4th at 206–07. Indeed, Lance never requested assistance, nor did he express that he was seriously injured. He verbally acknowledged he was shot and bleeding but did not ask for help. Furthermore, the officers were reasonable in believing Lance was not seriously injured. The purpose of "less lethal" munitions is to encourage a subject's compliance, to de-escalate a situation, without seriously injuring the person. Whether Officer Noriega fired his SAGE launcher at a closer distance than is recommended is not conclusively established by the record. Even if the Court were to find Officer Noriega was too close to Lance when he fired his SAGE launcher, the record does not establish the defendant officers were aware of this fact, nor does it establish the officers would have known Lance needed medical attention because of it. The strongest evidence of Lance's need for medical attention would have been his own statements

during the encounter—but he never expressed he was seriously injured, nor did he say he needed medical attention.

Similarly, Lance fails to proffer competent summary judgment evidence to show the officers' deliberate indifference to his serious medical need. A finding of deliberate indifference requires "egregious" conduct whereby an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Easter v. Powell*, 467 F.3d at 464. Lance points to Sergeant Contero's command that officers leave the scene after the shooting as evidence of the officers' wanton disregard for Lance's serious medical needs. Lance suggests this order was a violation of SAPD policy, which requires officers to tend to a detainee's medical needs. Here again, the issue is whether the officers clearly knew Lance needed medical attention. Even if Lance is correct that the officers' decision to leave Lance behind without offering medical assistance violated SAPD policy—and the parties disagree on that point—the officers' actions do not meet the "extremely high standard" of wanton disregard giving rise to a Fourteenth Amendment violation. *Gobert*, 463 F.3d at 346. Indeed, the record shows Lance was able to get timely, appropriate medical care on his own, raising a question as to whether he has suffered an injury giving rise to a cognizable claim at all.

Lance attempts to satisfy the second prong of the qualified immunity analysis—identifying clearly established law placing the defendant officers on notice their failure to administer medical care was unlawful—by citing to *Coleman v. Sweetin*, a Fifth Circuit case brought by a prisoner. 745 F.3d 756 (5th Cir. 2014). That case, however, is factually distinguishable from the case at bar in many respects. The Fifth Circuit in *Coleman v. Sweetin* reversed the district court's dismissal of defendant officials on qualified immunity grounds

where the plaintiff alleged he informed officials "he had fallen multiple times, his right hip was broken, and he was unable to move his leg, lie in bed, or use the toilet." *Id*. at 765. The *Coleman* plaintiff further alleged he informed officials he had been unable to visit the infirmary for four weeks, but they allegedly never followed up. *Id*. Unlike the *Coleman* plaintiff, Lance never asked the defendant officers for medical care and was able to receive appropriate medical care on his own.

The Court, therefore, finds Lance failed to overcome the defendant officers' qualified immunity defense by failing to meet the summary judgment standard on both prongs of the qualified immunity analysis. The defendant officers are entitled to qualified immunity and Lance's failure to administer medical care claim is dismissed.

### III.     City of San Antonio's Alleged Municipal Liability

Lance alleges the City of San Antonio is liable under § 1983 for adopting policies which deprived him of his constitutional rights and failing to properly train, supervise, or discipline its employees. A municipality is responsible only for its own illegal acts and cannot be held liable on a *respondeat superior* theory of recovery under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). Consequently, when a plaintiff asserts a § 1983 cause of action against a municipality, the alleged deprivation of constitutional rights must be connected to an official custom, policy, practice, ordinance or regulation. *Monell*, 436 U.S. at 690–94; *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012); *Flores v. Cameron County*, 92 F.3d 258, 263 (5th Cir. 1996). Thus, to survive a Federal Rule 12(b)(6) challenge to a claim of municipal liability, a plaintiff must allege: (1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred by a person acting

under the color of state law; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996).

Official policy usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Olson as Next Friend of H.J. v. City of Burnet*, 20-CV-00162, 2020 WL 9076545, at *3 (W.D. Tex. July 17, 2020). A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). "Acts of *omission,* as well as *commission,* may serve as a predicate for finding a policy or custom." *Batiste v. City of Beaumont*, 421 F.Supp.2d 969, 987 (E.D.Tex. 2005) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 463 (5th Cir. 1994)) (emphasis in original). The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016).

Municipalities may be held directly liable for failure to train, supervise, or discipline employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Deliberate indifference requires more than mere negligence. *Id*. A plaintiff must establish that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the

need." *Id*. Deliberate indifference is difficult to base on a single incident. *Id*. "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." *Id*. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Id*. *Monell* plaintiffs must also establish both the causal link ("moving force") and the municipality's degree of culpability ("deliberate indifference" to federally protected rights). *Piotrowski*, 237 F.3d 567 at 580.

Lance brings a cause of action against the City of San Antonio for adopting an unconstitutional use of force policy, adopting an unconstitutional policy regarding body worn cameras, and failing to properly train, monitor, discipline, and supervise Officer Noriega and the other defendant officers. *See* ECF No. 28 at 14-18. Lance abandoned any claims alleged in his complaint that are not defended in his summary judgment response. *See Thompson v. Exxon Mobil Corp.*, 344 F.Supp. 2d 971, 977 (E.D. Tex. 2004). Furthermore, the Court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). The Court, therefore, limits its analysis to those claims against the City of San Antonio which are specifically defended in Lance's summary judgment response.

### A.  Official Policy

Lance alleges the City of San Antonio adopted an unconstitutional policy regarding officers' use of force. Specifically, Lance says SAPD adopted a "persistent and widespread practice of officers using excessive intermediate force, or other excessive force against San Antonians." *See* ECF No. 71 at 14. Lance does not challenge the constitutionality of SAPD's official, written use of force policy. Indeed, this Court reviewed the city's written policy in a

different case and did not find the policy to be facially unconstitutional. *See Roundtree v. City of San Antonio*, No. 18-CV-1117, 2002 WL 903260 at \*7 (W.D. Tex. March 28, 2022). Instead, Lance suggests the policy improperly gave Officer Noriega discretion, which he abused, and SAPD officers have engaged in a widespread practice of similarly abusing their discretion.

Lance's alleged abuse of discretion, if true, is not in and of itself evidence of the city's defective policy. "An official, written policy is 'itself' unconstitutional if it affirmatively allows or compels unconstitutional conduct. But where such an official, written policy merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then the policy satisfies *Monell*'s moving-force element only if those features stem from the policymaker's deliberate indifference." *See Edwards v. City of Blach Springs*, 70 F.4th 302, 311 (5th Cir. 2023). Lance offers evidence suggesting Officer Noriega abused his discretion by improperly characterizing Lance's actions as "active resistance" justifying intermediate use of force under the City's written policy. The Court has already determined that Lance created a fact issue as to whether Officer Noriega engaged in excessive force. If the ultimate factfinder determines Officer Noriega applied excessive force in shooting Lance, then Officer Noreiga will have also violated the City's policy. Officer Noreiga's alleged abuse of discretion does not, however, give rise to municipal liability. A policymaker's "deliberate indifference" is the *sine qua non* of municipal liability. Lance offers no evidence of the City's "deliberate indifference" to officers abusing their discretion under the use of force policy. Nor does Lance offer any evidence that officers' abuse of discretion is so common and well-settled as to constitute a custom representing municipal policy. *Piotrowski v. City of Houston*, 237 F.3d at 578. Lance has therefore failed to meet his summary judgment burden regarding the City's use of force policy.

Lance raises a separate claim based on the City's allegedly defective policy regarding activation of officers' body worn cameras. Lance notes that four out of the nine SWAT team officers on the scene when Officer Noriega shot Lance did not have their body worn cameras activated. Lance says this is evidence establishing a pattern of officers failing to activate body worn cameras. This evidence, while concerning, is not sufficient to give rise to municipal liability. To sustain a claim for municipal liability, the "municipal policy must be affirmatively linked to the constitutional violation." *See Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). Sister courts have rejected similar *Monell* claims based on a failure to equip officers with body worn cameras as too far attenuated from the alleged constitutional violation. *See Barnes v. City of El Paso*, No. 22-CV-161, 2023 WL 4097075 at * 12 (W.D. Tex. June 12, 2023) *citing Elder-Keep v. Aksamit*, 460 F.3d 979, 987 (8th Cir. 2006). Here, Lance offers no evidence the officers' deactivated body worn cameras were the "but for" cause of his alleged constitutional violation. To the contrary, Lance suggests Officer Noriega fired his SAGE launcher because Officer Noriega was annoyed by Lance's verbal provocation. The Court, therefore, dismisses Lance's claim based on the City's policy regarding body worn cameras.

## B.  Failure to Train, Monitor, Discipline, and Supervise

Lance further alleges the City failed to properly train, monitor, discipline, and supervise Officer Noriega and the other defendant officers. Because the Court dismisses on summary judgment Lance's claims for failure to administer medical care, Lance's claim for municipal liability based on an alleged failure to administer medical care is similarly dismissed. Furthermore, Lance offers no evidence of the City's failure to train, monitor, discipline, and supervise Officer Noriega. Those claims are therefore deemed abandoned. *See Thompson v. Exxon Mobil Corp.*, 344 F.Supp. 2d at 977. Lance instead offers a ratification theory of liability,

arguing the City of San Antonio ratified Officer Noriega's excessive use of force when San Antonio Police Chief William McManus announced in a press conference on May 31, 2020 that no protestors were harmed at the May 30, 2020 demonstration.

Under the ratification theory of municipal liability, the Fifth Circuit has held that, "if the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127, (1988)). "[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Id*. at 849 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)). And "good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification." *Id*. (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010)).

Lance quotes from a May 31, 2020 press conference in which Chief McManus announced "[n]o one was hurt by police" in the May 30, 2020 protests. *See* ECF No. 71 at 8. Chief McManus later acknowledged, at the same press conference, that "[t]here was one rubber plug that was fired out of a SAGE gun, that's a shotgun, at an individual. There were a small group of SWAT officers and there was a group of demonstrators closing in on them. They fired tear gas at them, then picked up the tear gas canister and threw it back at them and at that point the SWAT officer fired the SAGE gun and they're … they're non-lethal weapons, they'll leave a nice welt on you but that's about it." *Id*. The record evidence establishes the following statements by Chief McManus are inaccurate or contested issues of fact: (1) Officer Noriega acknowledges he shot Lance with a two sponge rounds, not one rubber plug; (2) the video evidence does not support Chief McManus' statement that the demonstrators were "closing in"

on SWAT officers; (3) the record contains no evidence the SWAT officers fired tear gas on the corner of College and North Presa Streets, though the parties' agree officers fired tear gas at Alamo Plaza; (4) the parties disagree as to whether Lance was holding anything in his right hand that he might throw at officers; and (5) Chief McManus' characterization of the "nice welt" Lance suffered minimizes the seriousness of Lance's injuries. These misstatements by Chief McManus, while concerning, do not rise to the level of establishing ratification.

Even if a jury were to find Officer Noriega engaged in excessive force, Chief McManus' preliminary statements defending Officer Noriega's conduct do not necessarily incur liability on behalf of the municipality. *Peterson v. City of Fort Worth*, 588 F.3d at 849. The relevant question is whether Chief McManus approved of Officer Noriega's decision to use force and the basis for it. *Id*. Even though Chief McManus got the facts wrong at a press conference held a day after the incident occurred, SAPD later engaged in a thorough investigation into the propriety of Officer Noriega's use of force. Specifically, Officer Noriega's actions were reviewed by SAPD Captain Earwood, SAPD Internal Affairs, and SAPD's Complaint Administrative Review Board, which ultimately determined Officer Noriega's use of force was improper, at least with respect to firing the second round. Lance offers no evidence this review process was deficient, other than making a conclusory statement that Chief McManus improperly relied on "the judgment of the CARB to make disciplinary decisions while knowingly withholding critical evidence from the panel…" *See* ECF No. 71 at 15. Such conclusory statements, without evidence to support them, are insufficient to meet Lance's summary judgment burden. The Court, therefore, dismisses Lance's ratification theory of recovery on summary judgment.

**CONCLUSION**

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Officer Noriega's Motion for Summary Judgment (ECF No. 68), **GRANTS** the remaining officers' Motion for Summary Judgment (ECF No. 69), and **GRANTS** San Antonio's Motion for Summary Judgment (ECF No. 66).

Lance's excessive force claim against Officer Noriega shall proceed. Lance's failure to administer medical care claim against Officer Noriega is dismissed. All remaining claims against the remaining defendants are **DISMISSED WITH PREJUDICE**. The City of San Antonio is, therefore, **DISMISSED** from the case. Officers Rodolfo Contero, James Ybarra, Edwin Turner, Jonathan Reyes, Marshall Davis, Perla Dominguez, Drew Reyes, Cody Hagelin, and Valentin Figueroa are also **DISMISSED** from the case.

It is so ORDERED.
SIGNED this 20th day of February, 2024.

JASON  PULLIAM
UNITED STATES DISTRICT JUDGE